UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WE THE PATRIOTS USA, INC., | : | 3:23-cv-00727 |
| MATTHEW SHERMAN, | : | |
| BRANDON TISCHER | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| NED LAMONT, | : | |
|     Defendants. | : | JUNE 6, 2023 |

## **COMPLAINT**

    1.    This is an action to enjoin enforcement of portions of a new law that will restrict the right of Connecticut residents to carry firearms in public places and to purchase such firearms as they believe necessary to defend themselves. The plaintiffs contend that the new law, signed by Gov. Ned Lamont on June 7, 2023, and going into effect on October 1, 2023 unlawfully abridges their rights under the Second Amendment to the United States Constitution and under Article First, Section 15 of the Connecticut Constitution. It does so by prohibiting a person from "knowingly carry[ing] any firearm with intent display such firearm" and restricting their right to purchase firearms from any given dealer to no more than three guns in 30 days.

    2.    We The Patriots USC, Inc. is a nonprofit public charity organized and operated exclusively for tax-exempt purposes in accordance with Section 501(c)(3) of the Internal Revenue Code. More specifically, it is dedicated to promoting and defending constitutional rights, including Second Amendment Rights, through education, outreach, and public interest litigation. As a Section 501(c)(3) public charity, it has members who participate in its tax-exempt activities as volunteers and committed community stakeholders bringing and supporting litigation in federal and state courts on a variety of

constitutional and other freedom-related matters directly affecting their rights and interests. Its members include Connecticut residents affected by the matters complained of herein and share common claims to that brought by We The Patriots USA, Inc. in its representative capacity. We The Patriots USA, Inc., is registered as a Connecticut corporation.

3. Matthew Sherman is an adult resident of the State of Connecticut residing in Hamden. He is licensed to carry a firearm in Connecticut.

4. Brandon Tischer is an adult resident of the State of Connecticut residing in Wolcott. He is licensed to carry a firearm in Connecticut.

5. Ned Lamont is the governor of the State of Connecticut and is the state's top elected official with responsibility to assure that the laws of the State of Connecticut are enforced. He is sued in his official capacity only.

6. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 2201 as well as 42 U.S.C. §§ 1983 and 1988. Venue is appropriate under 28 U.S.C. § 1391 because all parties are domiciled in Connecticut, and all of the factual events giving rise to the cause of action occurred in Connecticut.

7. The Second Amendment to the United States Constitution guarantees an individual the right to bear arms. "A well regulation militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." United States Constitution, Second Amendment. The United States Supreme Court has held that this a personal right, enforceable against the States. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010).

8. Article First, Section 15 of the Connecticut Constitution guarantees an individual the right to bear arms. "Every citizen has a right to bear arms in defense of

himself [or herself] and the state" Connecticut Constitution, Art. I, Section 15. This right has been part of the state's constitution since 1818. This right has been construed to be a right to bear arms "in defense of [one]self and the state." "[T]he constitution protects each citizen's right to possess a weapon of reasonably sufficient firepower to be effective for self-defense." *Benjamin v. Bailey*, 234 Conn. 455, 465 (1995).

9. On June 7, 2023, Gov. Lamont signed into a law An Act Addressing Gun Violence, a purported response to soaring homicide rate in major Connecticut cities and reports of increased violent crimes such as car jackings. Connecticut rates of homicides and property crime are significantly above the national averages, according to statistics maintained by the Federal Bureau of Investigation. (Appendix A)

10. The new legislation is scheduled to take effect on October 1, 2023.

11. Although Gov. Lamont called the bill a means of addressing gun violence, it will have the unintended effect of making the streets more dangerous for law abiding citizens who will have fewer options with which to defend themselves against violent assault in public places

12. There are approximately 82,400 guns registered with state officials in Connecticut. The state has one of the lowest rates of gun ownership in the United States, ranking 43rd, with 18.8 percent of the population owning a gun. The national average is 39.8 percent. (https://wisevoter.com/state-rankings/gun-ownership-by-state/, last checked June 2, 2023) The number of unregistered guns is unknown.

13. Gun violence is often committed by individuals who do not possess legal firearms and who obtain them by unlawful means.

14. In recent years, Connecticut has adopted a series of law and public policies designed and intended to make police more accountable to the communities they serve. An unintended consequence of these efforts has been to provide officers with incentives to avoid responding to all but the most serious calls for fear that they will be to scorn, ridicule and punishment if they use their discretion in a tense or uncertain situation in such a way as to cause injury to a third party. The state has also adopted policies designed and intended to make it more difficult to hold in custody folks accused of violent crimes. Parole officials have also relaxed the standard for releasing persons convicted of violent crime back to their communities.

15. The result of these policies and laws has been to create a perception the streets are less safe than they used to be.

16. The plaintiffs choose to arm themselves against what they reasonably believe to be the threat of violence in public places in the state of Connecticut.

17. Prior to the passage of new Public Act, Connecticut was an "open Carry" state, in which registered gun owners were permitted to carry their weapons openly displayed in public, a practice some believe to be associated with a general deterrence of strangers to engage in acts of violence.

18. The new restricts the right of a registered gun owner to carry their right to do so by making it a crime to open carry a firearm in Connecticut unless one meets the requirements of a narrow class of exemptions, such as being a law enforcement officer. HB 6667, Sec. 2.

19. The unintended consequence of this law will be to prohibit those in lawful possession of a gun permit to carry their weapon openly for the purpose of self-defense

while leaving unaddressed the fact that many individuals unlawfully possess, carry, and then use guns to commit crimes.

20. The plaintiffs contend that while the state of Connecticut punishes those crimes it is able to detect, it does not, and cannot, adequately protect citizens from crimes that have no yet occurred. The open carry ban irrationally makes the streets less safe for ordinary citizens.

21. The new Public Act also prohibits a person from acquiring more than three handguns within a 30-day period from any particular dealer, an arbitrary limit bearing no relation to public safety, but infringing a citizen's right to choose the manner and means of defending himself or herself. HB 6667, Section 9(f)(1).

22. The act violates both the state and federal constitutional rights to bear arms.

**COUNT ONE – The Open Carry Restriction Violates the United States Constitution**

23. Paragraphs one through 22 are incorporated herein.

24. The Act in Section 2 unlawfully infringes the right to bear arms under Second Amendment to the United States Constitution

**COUNT TWO – The Open Carry Restriction Violates the State Constitution**

25. Paragraphs one through 22 are incorporated herein.

26. The Act in Section 2 unlawfully infringes the right to bear arms under Article First, Section Fifteen of the Connecticut Constitution.

**COUNT THREE – The Purchase Limitation Violates the United States Constitution**

27. Paragraphs one through 27 are incorporated herein.

28. The Act in Section 9 unlawfully infringes the right to bear arms under the Second Amendment to the United States Constitution.

**COUNT Four – The Purchase Limitation Violates the Violates the United States Constitution**

29. Paragraphs one through 22 are incorporated herein.

30. The Act in Section nine unlawfully infringes the right to bear arms under Article First, Section 15 of the Connecticut Constitution.

### Declaratory and Injunctive Relief

WHEREFORE, the Plaintiffs seeks declaratory injunctive relief as follows:

A. A declaratory judgment finding that sections two and nine of the Act violate the Second Amendment to the United States Constitutions right to bear arms and is unconstitutional.

B. A declaratory judgment finding that sections two and nine of the Act violate the right to bear arms under Article First, Section Fifteen of the Connecticut Constitution and is unconstitutional.

C. A permanent injunction enjoining the Defendant and his agents from enforcing any provision of sections two and nine of the Act;

D. Reasonable costs and attorney's fees.

E. Such other relief as this Court deems fair and equitable.

THE PLAINTIFFS

/s/ Norman A. Pattis /s/
NORMAN A. PATTIS, ESQ.
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
npattis@pattisandsmith.com
Fed Bar. No.: ct13120

# EXHIBIT A - Relevant Excerpts from HB6667



# House of Representatives

## File No. 841

General Assembly

January Session, 2023     **(Reprint of File No. 641)**

Substitute House Bill No. 6667
As Amended by House Amendment
Schedules "A" and "B"

Approved by the Legislative Commissioner
May 30, 2023

**AN ACT ADDRESSING GUN VIOLENCE.**

Be it enacted by the Senate and House of Representatives in General Assembly convened:

1    Section 1. Section 29-35 of the general statutes is repealed and the
2    following is substituted in lieu thereof (*Effective October 1, 2023*):

3    (a) (1) No person shall carry any pistol or revolver upon [his or her]
4    such person's person, except when such person is within [the dwelling
5    house or place of business of such person] such person's dwelling house,
6    on land leased or owned by such person or within the place of business
7    of such person, without a permit to carry the same issued as provided
8    in section 29-28, as amended by this act.

9    (2) No person shall knowingly carry any firearm with intent to
10   display such firearm, except when such person is within such person's
11   dwelling house, on land leased or owned by such person or within the
12   place of business of such person, or such person is engaged in firearm
13   training or bona fide hunting activity. For the purposes of this
14   subdivision, a person shall not be deemed to be carrying a firearm with
15   intent to display such firearm if such person has taken reasonable
16   measures to conceal the fact that such person is carrying a firearm.

17  Neither a fleeting glimpse of a firearm nor an imprint of a firearm
18  through such person's clothing shall constitute a violation of this
19  subdivision. If a person displays a firearm temporarily while engaged
20  in self-defense or other conduct that is otherwise lawful, such display
21  shall not constitute a violation of this subdivision.

22  (3) The provisions of this subsection shall not apply to the carrying of
23  any [pistol or revolver] firearm by any: [parole]

24  (A) (i) Parole officer or peace officer of this state, or [any] (ii) parole
25  officer or peace officer of any other state while engaged in the pursuit of
26  official duties;

27  (B) Department of Motor Vehicles inspector appointed under section
28  14-8 and certified pursuant to section 7-294d; [, or parole officer or peace
29  officer of any other state while engaged in the pursuit of official duties,
30  or federal]

31  (C) Federal marshal or federal law enforcement agent; [, or to any
32  member]

33  (D) Member of the armed forces of the United States, as defined in
34  section 27-103, or of the state, as defined in section 27-2, when on duty
35  or going to or from duty; [, or to any member]

36  (E) Member of any military organization when on parade or when
37  going to or from any place of assembly; [, or to the transportation of
38  pistols or revolvers]

39  (F) Person transporting or inspecting a firearm as merchandise; [, or
40  to any person transporting any pistol or revolver while]

41  (G) Person transporting a firearm contained in the package in which
42  [it] such firearm was originally wrapped at the time of sale and while
43  transporting the same from the place of sale to the purchaser's residence
44  or place of business; [, or to any person]

45  (H) Person transporting a firearm as part of the process of removing

532  there is no chief of police, the chief executive officer of the municipality
533  or if designated by such chief executive officer, the resident state trooper
534  at the permitted premises. The commissioner or chief or, where there is
535  no chief of police, the chief executive officer of the municipality or if
536  designated by such chief executive officer, the resident state trooper
537  may assess a civil penalty against of not more than one hundred dollars
538  per day during which the violation continues. Any person who sells,
539  delivers or otherwise transfers a firearm in violation of a stop sales order
540  shall be guilty of a class C felony for which two years of the sentence
541  imposed may not be suspended or reduced by the court, and five
542  thousand dollars of the fine imposed may not be remitted or reduced by
543  the court unless the court states on the record its reasons for remitting
544  or reducing such fine.

545  (3) Any person against which a stop sales order is issued pursuant to
546  subdivision (2) of this subsection may request a hearing before the
547  commissioner to challenge the grounds for issuance of such stop sales
548  order and any associated civil penalties. Such hearing shall be
549  conducted not later than seven days after receipt of such request in
550  accordance with the provisions of chapter 54 of the general statutes.

551  (4) Stop sales orders shall be effective against any successor entity
552  that has one or more of the same principals or officers as the corporation,
553  partnership or sole proprietorship against which the stop sales order
554  was issued and are engaged in the same or equivalent trade or activity.

555  (5) The commissioner shall adopt regulations, in accordance with the
556  provisions of chapter 54 of the general statutes, to specify any hearing
557  provisions necessary to carry out the provisions of this subsection.

558  Sec. 9. Section 29-33 of the general statutes is repealed and the
559  following is substituted in lieu thereof (*Effective October 1, 2023*):

560  (a) No person, firm or corporation shall sell, deliver or otherwise
561  transfer any pistol or revolver to any person who is prohibited from
562  possessing a pistol or revolver as provided in section 53a-217c, as
563  amended by this act.

564    (b) [On and after October 1, 1995, no] No person may purchase or
565 receive any pistol or revolver unless such person holds a valid permit to
566 carry a pistol or revolver issued pursuant to subsection (b) of section 29-
567 28, as amended by this act, a valid permit to sell firearms at retail [a
568 pistol or revolver] issued pursuant to subsection (a) of section 29-28, as
569 amended by this act, or a valid eligibility certificate for a pistol or
570 revolver issued pursuant to section 29-36f, as amended by this act, or is
571 a federal marshal, parole officer or peace officer.

572    (c) No person, firm or corporation shall sell, deliver or otherwise
573 transfer any pistol or revolver except upon written application on a form
574 prescribed and furnished by the Commissioner of Emergency Services
575 and Public Protection. Such person, firm or corporation shall ensure that
576 all questions on the application are answered properly prior to releasing
577 the pistol or revolver and shall retain the application, which shall be
578 attached to the federal sale or transfer document, for at least twenty
579 years or until such vendor goes out of business. Such application shall
580 be available for inspection during normal business hours by law
581 enforcement officials. No sale, delivery or other transfer of any pistol or
582 revolver shall be made unless the person making the purchase or to
583 whom the same is delivered or transferred is personally known to the
584 person selling such pistol or revolver or making delivery or transfer
585 thereof or provides evidence of his identity in the form of a motor
586 vehicle operator's license, identity card issued pursuant to section 1-1h
587 or valid passport. No sale, delivery or other transfer of any pistol or
588 revolver shall be made until the person, firm or corporation making
589 such transfer obtains an authorization number from the Commissioner
590 of Emergency Services and Public Protection. Said commissioner shall
591 perform the national instant criminal background check and make a
592 reasonable effort to determine whether there is any reason that would
593 prohibit such applicant from possessing a pistol or revolver as provided
594 in section 53a-217c, as amended by this act. If the commissioner
595 determines the existence of such a reason, the commissioner shall (1)
596 deny the sale and no pistol or revolver shall be sold, delivered or
597 otherwise transferred by such person, firm or corporation to such

598 applicant, and (2) inform the chief of police of the town in which the
599 applicant resides, or, where there is no chief of police, the warden of the
600 borough or the first selectman of the town, as the case may be, that there
601 exists a reason that would prohibit such applicant from possessing a
602 pistol or revolver.

603 (d) No person, firm or corporation shall sell, deliver or otherwise
604 transfer any pistol or revolver, other than at wholesale, unless such
605 pistol or revolver is equipped with a reusable trigger lock, gun lock or
606 gun locking device appropriate for such pistol or revolver, which lock
607 or device shall be constructed of material sufficiently strong to prevent
608 it from being easily disabled and have a locking mechanism accessible
609 by key or by electronic or other mechanical accessory specific to such
610 lock or device to prevent unauthorized removal. No pistol or revolver
611 shall be loaded or contain therein any gunpowder or other explosive or
612 any bullet, ball or shell when such pistol or revolver is sold, delivered
613 or otherwise transferred.

614 (e) Upon the sale, delivery or other transfer of any pistol or revolver,
615 the person making the purchase or to whom the same is delivered or
616 transferred shall sign a receipt for such pistol or revolver, which shall
617 contain the name and address of such person, the date of sale, the
618 caliber, make, model and manufacturer's number and a general
619 description of such pistol or revolver, the identification number of such
620 person's permit to carry pistols or revolvers, issued pursuant to
621 subsection (b) of section 29-28, as amended by this act, permit to sell
622 firearms at retail, [pistols or revolvers,] issued pursuant to subsection
623 (a) of said section, or eligibility certificate for a pistol or revolver, issued
624 pursuant to section 29-36f, as amended by this act, if any, and the
625 authorization number designated for the transfer by the Department of
626 Emergency Services and Public Protection. The person, firm or
627 corporation selling such pistol or revolver or making delivery or transfer
628 thereof shall (1) give one copy of the receipt to the person making the
629 purchase of such pistol or revolver or to whom the same is delivered or
630 transferred, (2) retain one copy of the receipt for at least five years, and
631 (3) send, by first class mail, or electronically transmit, within forty-eight

632  hours of such sale, delivery or other transfer, (A) one copy of the receipt
633  to the Commissioner of Emergency Services and Public Protection, and
634  (B) one copy of the receipt to the chief of police of the municipality in
635  which the transferee resides or, where there is no chief of police, the
636  chief executive officer of the municipality, as defined in section 7-148, in
637  which the transferee resides or, if designated by such chief executive
638  officer, the resident state trooper serving such municipality or a state
639  police officer of the state police troop having jurisdiction over such
640  municipality.

641  (f) (1) The Commissioner of Emergency Services and Public
642  Protection shall not issue more than three authorization numbers for
643  sale at retail of a pistol or revolver to any transferee within a thirty-day
644  period, except that if such transferee is certified as a firearms instructor
645  by the state pursuant to section 29-28, as amended by this act, or the
646  National Rifle Association, said commissioner shall not issue more than
647  six authorization numbers within a thirty-day period.

648  (2) No authorization number issued for any of the following purposes
649  shall count toward the limits in subdivision (1) of this subsection: (A)
650  Any firearm transferred to a federal, state or municipal law enforcement
651  agency, or any firearm legally transferred under the provisions of
652  section 29-36k, (B) the exchange of a pistol or revolver purchased by an
653  individual from a federally licensed firearm dealer for another pistol or
654  revolver from the same federally licensed firearm dealer not later than
655  thirty days after the original transaction, provided the federally licensed
656  firearm dealer reports the transaction to the Commissioner of
657  Emergency Services and Public Protection, (C) as otherwise provided in
658  subsection (h) or (i) of this section, or (D) a transfer to a museum at a
659  fixed location that is open to the public and displays firearms as part of
660  an educational mission.

661  [(f)] (g) The provisions of this section shall not apply to antique pistols
662  or revolvers. An antique pistol or revolver, for the purposes of this
663  section, means any pistol or revolver which was manufactured in or
664  before 1898 and any replica of such pistol or revolver provided such