## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WE THE PATRIOTS USA, INC., et. al. | ) | CASE NO. 3:23-cv-00737 (KAD) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NED LAMONT, | ) | MARCH 22, 2024 |
| *Defendant*. | ) | |

### <u>MEMORANDUM OF DECISION</u>
### RE: MOTION TO DISMISS FOR LACK OF JURISDICTION BY NED LAMONT (ECF NO. 15) AND MOTION TO ADD PARTY BY WE THE PATRIOTS USA, INC. (ECF NO. 19)

Kari A. Dooley, United States District Judge:

We the Patriots USA, Inc., Matthew Sherman, and Brandon Tischer (collectively, "Plaintiffs") bring this lawsuit challenging certain provisions of Connecticut Public Act No. 23-53 under the Second Amendment of the United States Constitution and Article First, Section 15 of the Connecticut Constitution. Governor Ned Lamont ("Defendant" or "Governor Lamont") moves to dismiss, asserting that the Court lacks subject matter jurisdiction because the claims in the Complaint are barred by the Eleventh Amendment. For the reasons that follow, the motion is GRANTED.

**Standard of Review**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) (*per curiam*) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "As the party asserting subject matter jurisdiction, plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists." *Ceken v. Chertoff*, 536 F. Supp. 2d 211, 214 (D. Conn. 2008). In a facial

challenge to subject matter jurisdiction, as is asserted here, the Court must "take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Mercer v. Schriro*, 337 F. Supp. 3d 109, 122 (D. Conn. 2018) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). *See also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016) (in addressing a "facial" challenge to subject matter jurisdiction, the district court must determine whether, after accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction).

**Facts and Procedural History**

Plaintiff We the Patriots USA, Inc. is a nonprofit public charity that is "dedicated to promoting and defending constitutional rights, including Second Amendment Rights …" Compl. ¶ 2, ECF No. 1. Plaintiffs Matthew Sherman and Brandon Tischer are adult residents of Connecticut who are licensed to carry firearms in the state. *Id.* ¶¶ 3-4. Plaintiffs bring this action against Governor Ned Lamont to enjoin enforcement of "An Act Addressing Gun Violence," a bill enacted to respond to increasing homicide rates and violent crimes in Connecticut ("the Act"). *Id.* ¶ 9. The legislation took effect on October 1, 2023. *Id.* ¶ 10. Plaintiffs allege that while Governor Lamont called the bill a measure to curb gun violence, it will have the unintended effect of making the streets less safe for law abiding citizens who will have fewer options to defend themselves against assault in public spaces. *Id.* ¶ 11.

Plaintiffs allege that Connecticut has one of the lowest rates of gun ownership in the country, that gun violence is often committed by individuals who do not possess their firearms lawfully, and that recent new laws and public policies have inadvertently provided police officers

with "incentives to avoid responding to all but the most serious calls" and additionally made it more difficult to detain individuals accused of violent crimes. *Id.* ¶¶ 12-14. All of these factors, Plaintiffs argue, have created a perception that Connecticut streets are less safe than they once were. *Id.* ¶ 15. Plaintiffs choose to arm themselves based on their reasonable perception of the threat of violence in Connecticut's public spaces. *Id.* ¶ 16.

Plaintiffs challenge two provisions of the new law. The first provision, the so-called open carry provision, makes it a crime to openly carry a firearm in Connecticut unless an individual meets the requirements for a narrow class of exemptions, such as being a law enforcement officer. *Id.* ¶ 18. The second provision prohibits a person from acquiring more than three handguns within a 30-day period from any particular dealer. *Id.* ¶ 21. Plaintiffs allege that the first provision will unintentionally prohibit individuals with lawful gun permits from carrying their weapons openly for purposes of self-defense, and the second bears "no relation" to public safety and infringes a citizen's rights to choose the manner and means of defending themselves. *Id.* ¶¶ 19-21. Both provisions, Plaintiffs allege, violate the Second Amendment of the United States Constitution and Article First, Section Fifteen of the Connecticut Constitution. *Id.* ¶¶ 23-30.

**Discussion**

Governor Lamont seeks dismissal on the ground that all claims in the Complaint are barred by the Eleventh Amendment to the United States Constitution. Def. Mot. to Dismiss at 1, ECF No. 15-1. The Court agrees.

"[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). This limitation is enshrined in the Eleventh Amendment, which abrogated the Supreme

Court's decision in *Chisholm v. Georgia*, 2 Dall. 419 (1793). *See id.* at 97–98. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Amendment has been read to bar from federal court suits brought against states by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890); *see also Employees of Dep't. of Public Health & Welfare v. Dep't of Public Health & Welfare*, 411 U.S. 279, 280 (1973).

However, the Eleventh Amendment does not bar lawsuits in federal court against a state and its officials if the state consents to suit, Congress has abrogated the state's immunity, or the case falls within the exception to the state's sovereign immunity established in *Ex parte Young*, 209 U.S. 123 (1908). *Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ("The Eleventh Amendment bars such suits unless the state has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity") (internal citations omitted); *see also Pennhurst*, 465 at 99–101 (1984). Here, there is no claim that the state has consented to suit and it is clear that Congress has not abrogated the state's immunity. Plaintiffs' only recourse, therefore, is application of the *Ex parte Young* doctrine.

The Supreme Court held in *Ex parte Young* that where officers of the state, clothed with some duty to enforce the laws of the state, threaten to or are about to commence civil or criminal proceedings to enforce an unconstitutional act or otherwise violate an individual's federal rights, the threatened individual may seek an injunction against that state officer to prevent the enforcement of the unconstitutional act. *Ex parte Young*, 209 U.S. 123, 156 (1908); *National R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 100 (2d Cir. 2015) ("An exception [to a state's

sovereign immunity] exists for suits against state officers alleging a violation of federal law and seeking injunctive relief that is prospective in nature."). Important to the analysis, the official being sued must have (1) a particular duty to enforce the law in question and (2) a demonstrated willingness to exercise that duty. *See Roberson v. Cuomo*, 524 F. Supp. 3d 196, 223 (S.D.N.Y. 2021) (collecting cases); *see also Lighthouse Fellowship Church v. Northam*, 515 F. Supp. 3d 384, 395 (E.D. Va. 2021) (stating that a state officer can only be sued and enjoined under *Ex parte Young* if (1) there is a "special connection" between the officer sued and the enforcement of the challenged statute, and (2) the officer acted or threatened to enforce the statute), *vacated on other grounds*, 20 F.4th 157 (4th Cir. 2021).

Plaintiffs argue that Governor Lamont is the head of the state's executive branch and therefore "obliged to see to it that the laws of the state are enforced." Pls.' Opp. to Mot. to Dismiss at 4, ECF No. 18. However, "[a] governor does not meet this exception solely 'based upon the theory that [he or she], as the executive of the state, was, in a general sense, charged with the execution of all its laws.'" *See Hund v. Cuomo*, 501 F. Supp. 3d 185, 198 (W.D.N.Y. 2020) (quoting *Ex parte Young*, 209 U.S. at 157) (alterations in *Hund*); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir.1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."). Indeed, if a suit could be brought against a governor based upon his general duty to enforce the law alone, then "the constitutionality of every act passed by the legislature could be tested by a suit against the governor" without limitation, a result which would, in effect, make the state a party to the suit and undermine the state's sovereign immunity. *See Ex parte Young*, 209 U.S. at 157. "Applicability of the *Ex parte Young* exception turns on who has the prospective

authority to *enforce* the law, not on who had retrospective authority to *create* the law." *Lighthouse Fellowship Church*, 515 F. Supp.3d at 396 (emphasis in original).

Here, the Act in question, an excerpted copy of which is attached to the Complaint, does not create or contemplate any specific duty on the part of the Governor with respect to the enforcement of the open carry provision or the restrictions on multiple gun purchases during a thirty day period.[1] And Plaintiffs have not identified any statutory language to suggest otherwise. Indeed, the entirety of Plaintiffs' allegations concerning the Governor in their Complaint are contained in paragraph 5, in which they allege that he is "the state's top elected official with responsibility to assure that the laws of the State of Connecticut are enforced." Compl. ¶ 5. Plaintiffs' opposition does not expand beyond this assertion. As discussed above, this is insufficient to allege the requisite connection between Governor Lamont and enforcement of the statute for purposes of triggering the *Ex parte Young* exception to the state's sovereign immunity under the Eleventh Amendment. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 142 (D. Conn. 2011) (noting that "courts in the Second Circuit have not extended the exception under *Ex parte Young* on the basis that a state official has a general duty to execute and enforce state laws" and finding Eleventh Amendment immunity attached to defendant governor where plaintiffs had not demonstrated that governor had a special connection to the enforcement of the challenged state action); *Connecticut Ass'n of Health Care Facilities, Inc. v. Rell*, No. 3:10-CV-136 PCD, 2010 WL 2232693, at *5 (D. Conn. June 3, 2010) (plaintiff could not establish *Ex parte* Young exception against defendant governor where plaintiff had only alleged that governor introduced the challenged bill and had general duty to execute and enforce state laws); *Urso v. Lamont*, No. 3:20-CV-00529, 2021 WL 5919819, at *6 (D. Conn. Dec. 15, 2021) (suit against governor challenging

---

[1] The Court additionally takes judicial notice of the publicly available copy of the Act on the Connecticut General Assembly's website. *See* https://www.cga.ct.gov/2023/ACT/PA/PDF/2023PA-00053-R00HB-06667-PA.PDF.

mask mandate in executive orders barred by Eleventh Amendment where governor had no authority under the orders to enforce the mandate).

Plaintiffs similarly cannot bring claims under the Connecticut Constitution against Governor Lamont. The *Ex parte Young* doctrine "applies only where a Plaintiff alleges ongoing violations of federal law." *Mallison v. Connecticut Off. of Early Childhood*, 657 F. Supp. 3d 221, 234 (D. Conn. 2023) (citing *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645). *See also Bad Frog Brewery v. New York State Liquor Auth.*, 134 F.3d 87, 93 (2d Cir. 1998) ("It is well settled that federal courts may not grant declaratory or injunctive relief against a state agency based on violations of state law") (citing *Pennhurst*, 465 U.S. at 106); *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("To the extent Plaintiffs seek prospective relief against Defendants in their official capacity for violations of the 'Connecticut Constitution' and 'state law,' those claims are indeed barred by the Eleventh Amendment.").

Accordingly, all claims against Governor Lamont are dismissed for lack of subject matter jurisdiction. Plaintiffs request that in the event the Court agrees that Governor Lamont is not a proper party to the action for purposes of *Ex parte Young,* the Court should permit Plaintiffs to amend the Complaint to add an additional party.[2] Pls. Opp. at 1, ECF No. 18. The Governor does not address this alternative request for relief in his papers. "Rule 15(a) [of the Federal Rules of Civil Procedure] declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs may file an amended complaint compliant with Local Rule 7(f) by April 22, 2024.[3] The Court offers no

---

[2] Plaintiffs ask the Court to render the motion to dismiss moot by permitting the proposed Amended Complaint if the Court agrees that the motion to dismiss is meritorious. Procedurally, this request makes no sense. The Court therefore construes Plaintiffs' request as one for leave to amend the complaint, should the motion to dismiss be granted.

[3] The Court provides Plaintiffs with more than the usual number of days to amend the complaint in light of, *inter alia,* the issue identified in footnote four below.

opinion as to the sustainability of the proposed Amended Complaint, *see* ECF Nos. 18-1 and 19-1, attached to Plaintiffs' opposition to the motion to dismiss except to observe that it too names Governor Lamont as a Defendant.[4] Any Amended Complaint may not name Governor Lamont as a Defendant for the reasons discussed herein.

**Conclusion**

For the forgoing reasons, Defendant's Motion to Dismiss for Lack of Jurisdiction, ECF No. 15, is GRANTED, and Plaintiffs' Motion to Add a Party construed as a motion to amend the complaint, ECF No. 19, is GRANTED. The Clerk of Court is directed to terminate Governor Lamont as a defendant.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of March 2024.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[4] The Court does not opine as to whether State's Attorney John P. Doyle is the appropriate state official for purposes of *Ex parte Young,* but notes that the proposed Amended Complaint indicates that he is being sued in his "individual capacity only." This is perplexing. If he is sued in his individual capacity only, any claim against him would not provide an avenue for prospective declaratory or injunctive relief against the state of Connecticut, which, the Court understands, is Plaintiffs' purpose in pursuing this litigation.